1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LAWRENCE JAMES THOMAS,                    No.  2:14-cv-2129 AC

12              Plaintiff,

13        v.                                   ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under

20   Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f.[1]  For the reasons that

21   follow, the court will grant plaintiff's motion for summary judgment, deny the Commissioner's

22   cross-motion for summary judgment, and remand this matter for further proceedings.  In

23   summary, the ALJ committed reversible legal error by failing to consider plaintiff's claim that he

24   ///

25   _____

26        [1] SSI is paid to financially needy disabled persons.  42 U.S.C. § 1382(a); Washington
     State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375
27   (2003) ("Title XVI of the Act, § 1381 et seq., is the Supplemental Security Income (SSI) scheme
     of benefits for aged, blind, or disabled individuals, including children, whose income and assets
     fall below specified levels . . .").

28

                                                 1

met or equaled ¶ 12.05C, of the Listing of Impairments ("Listings"), 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C (intellectual disability).

## I.  PROCEDURAL BACKGROUND

Plaintiff applied for supplemental security income on June 29, 2011.  Administrative Record ("AR") 12 (Decision).[2]  The disability onset date was alleged to be January 1, 2002.  Id. The applications were disapproved initially and on reconsideration.  Id.  On May 8, 2013, ALJ Carol A. Eckersen presided over the hearing on plaintiff's challenge to the disapprovals. AR 26-66 (transcript).  Plaintiff was present and testified at the hearing.  AR 30-60.  He represented by attorney Peter Brixie at the hearing.  AR 26.  Bonnie Drumwright, a vocational expert, also testified at the hearing.  AR 60-63.

On April 10, 2013, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 12-21 (decision), 22-25 (exhibits).  On August 29, 2014, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1-4 (decision).

Plaintiff filed this action on September 15, 2014.  ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3).  The parties consented to the jurisdiction of the magistrate judge.  ECF Nos. 8, 10.  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed.  ECF Nos. 18 (plaintiff's summary judgment motion), 23 (Commissioner's summary judgment motion).

## II.  FACTUAL BACKGROUND

Plaintiff was born on December 13, 1969, and accordingly was 41years old, and thus a "younger" person, when he filed his application.  AR 19.  Plaintiff has a 9th grade education and no high school equivalency certificate.  AR 282.

///

///

---

[2] The AR is electronically filed at ECF Nos. 14-3 to 14-16 (AR 1 to AR 534).

1  III.  LEGAL STANDARDS

2  The Commissioner's decision that a claimant is not disabled will be upheld "if it is

3  supported by substantial evidence and if the Commissioner applied the correct legal standards."

4  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

5  Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"

6  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

7  Substantial evidence is "more than a mere scintilla," but "may be less than a

8  preponderance."  Molina v. Astrue , 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such

9  evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v.

10  Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the

11  record can constitute substantial evidence, only those 'reasonably drawn from the record' will

12  suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

13  Although this court cannot substitute its discretion for that of the Commissioner, the court

14  nonetheless must review the record as a whole, "weighing both the evidence that supports and the

15  evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Secretary of HHS,

16  846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The

17  court must consider both evidence that supports and evidence that detracts from the ALJ's

18  conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

19  "The ALJ is responsible for determining credibility, resolving conflicts in medical

20  testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th

21  Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of

22  which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v. Barnhart,

23  278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the

24  ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."

25  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th

26  Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

27  evidence that the ALJ did not discuss").

28  ///

1    The court will not reverse the Commissioner's decision if it is based on harmless error,

2    which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

3    ultimate nondisability determination.'"   Robbins v. SSA, 466 F.3d 880, 885 (9th Cir. 2006)

4    (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

5    Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

6                              IV.  RELEVANT LAW

7    Supplemental Security Income is available for every eligible individual who is "disabled."

8    42 U.S.C. § 1381a.  Plaintiff is "disabled" if he is "'unable to engage in substantial gainful

9    activity due to a medically determinable physical or mental impairment . . ..'"  Bowen v. Yuckert,

10   482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. § 1382c(a)(3)(A).

11   The Commissioner uses a five-step sequential evaluation process to determine whether an

12   applicant is disabled and entitled to benefits.  20 C.F.R. § 416.920(a)(4); Barnhart v. Thomas,

13   540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine

14   disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

15
16           Step one: Is the claimant engaging in substantial gainful activity?  If
             so, the claimant is not disabled.  If not, proceed to step two.
17
     20 C.F.R. § 416.920(a)(4)(i), (b).
18
             Step two: Does the claimant have a "severe" impairment?  If so,
             proceed to step three.  If not, the claimant is not disabled.
19
     Id., § 416.920(a)(4)(ii), (c).
20
             Step three: Does the claimant's impairment or combination of
21           impairments meet or equal an impairment listed in 20 C.F.R., Pt.
             404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not,
22           proceed to step four.

     Id., § 416.920(a)(4)(iii), (d).
23
             Step four: Does the claimant's residual functional capacity make
24           him capable of performing his past work?  If so, the claimant is not
             disabled.  If not, proceed to step five.
25
     Id., § 416.920(a)(4)(iv), (e), (f).
26
             Step five: Does the claimant have the residual functional capacity
27           perform any other work?  If so, the claimant is not disabled.  If not,
             the claimant is disabled.
28

                                      4

Id., § 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy."  Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. [Step 1] The claimant has not engaged in substantial gainful activity since June 29, 2011, the application date (20 CFR 416.971 et seq.).
>
> 2. [Step 2] The claimant has the following severe impairments: seizure disorder and bipolar disorder (20 CFR 416.920(c)).
>
> 3. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. [Preparation for Step 4]  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except he must avoid even moderate exposure to workplace hazards such as moving machinery, working at heights and operating motor vehicles.  He requires simple repetitive tasks in a non-public setting and can have occasional interaction with co-workers and supervisors.  He will need additional instructions twice a day.
>
> 5. [Step 4] The claimant has no past relevant work (20 CFR 416.965).
>
> 6. [Step 5] The claimant was born on December 13, 1969 and was 41 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).
>
> 7. [Step 5, continued] The claimant has a 9th grade limited education and is able to communicate in English (20 CFR 416.964).
>
> 8. [Step 5, continued] Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).
>
> 9. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs

5

1

that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

2

3

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 29, 2011, the date the application was filed (20 CFR 416.920(g)).

4

5

AR 14-20.

6

As noted, the ALJ concluded that plaintiff was "not disabled" under

7

Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 20.

8

VI.  ANALYSIS

9

Plaintiff argues that the ALJ erred by failing to evaluate Listings ¶ 12.05C.[3]  Plaintiff

10

meets or equals Listings ¶ 12.05C ("intellectual disability") if he has: (1) significantly

11

sub-average general intellectual functioning with deficits in adaptive functioning initially

12

manifested before age 22; (2) a valid "verbal, performance or full scale IQ" of 60 through 70; and

13

(3) a physical or other mental impairment imposing an additional and significant work-related

14

limitation of function.  Listings § 12.05C; Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th Cir.

15

2013) (same).

16

At the hearing on November 15, 2012, plaintiff's counsel raised the issue of whether

17

plaintiff met Listings ¶ 12.05:

18

I suspect that [Dr. Eargle's] report showed that [plaintiff's] verbal IQ was sub-70 which might lend itself to 12.05. . . .  In the record, it indicated that Mr. Thomas had great difficulty with short-term, auditory memory, planning ability, sequential processing, and responding to verbal information in a step-by step sequential fashion such that they had concerns about him being able to take care of his ALD [sic].

19

20

21

22

AR 63-64.  The ALJ acknowledged that Dr. Earle's report was not sufficient to make a

23

determination of whether plaintiff met Listings ¶ 12.05, and stated that plaintiff should be sent to

24

///

25

///

26

[3] Plaintiff also argues that the ALJ failed to consider the limitations reported by Troy Ewing, Psy. D.  Because this matter must be remanded for failing to consider Listings ¶ 12.05C, this argument need not be considered at this time.

27

28

1   a consulting examiner for tests "to see where you're at." AR 64-65 ("I would be remiss in my

2   duty to get a complete record if we don't get a CE since you've raised the issue").[4]

3       On February 7, 2013, plaintiff was evaluated by that consulting examiner, Troy Ewing,

4   Psy.D. AR 514-24 (Exh. 15F). Dr. Ewing administered a battery of tests to plaintiff, including

5   the Weschler Adult Intelligence Scale – 4th Edition (WAIS-IV). The WAIS testing showed

6   plaintiff's full scale IQ to be at 70, and thus plaintiff was within the requirement for Listings

7   ¶ 12.05C, if that report was credited as true. AR 517, 518.[5] On February 14, 2013, the ALJ

8   wrote to plaintiff's counsel advising counsel that he had secured the report of Dr. Ewing, and

9   forwarded it on to counsel. AR 186-87. On February 18, 2013, plaintiff's counsel wrote to the

10   ALJ, asserting that "[t]he report of Troy Ewing, Psy. D. shows that Lawrence Thomas suffers

11   from a listing level 12.05 Mental Retardation . . .." AR 189.

12       Despite specifically requesting Dr. Ewing's opinion, the ALJ did not state what weight, if

13   any, she gave Dr. Ewing's opinion, nor did she discuss whether plaintiff meets or equals Listings

14   ¶ 12.05C in light of that opinion, or for that matter, in light of any other evidence. See AR 14-16

15   (considering Listings ¶¶ 11.02 (epilepsy) and 12.04 (affective disorders)). This is legal error

16   because Dr. Ewing opines on matters that are directly relevant to whether plaintiff meets Listings

17   ¶ 12.05C.

18       A.  Intellectual functioning and early-onset deficits in adaptive functioning

19         1.  Intellectual functioning

20       Plaintiff meets the first part of the first requirement of Listings ¶ 12.05C if he has

21   "significantly sub-average general intellectual functioning." Listings ¶ 12.05C. Dr. Ewing's

22

---

23       [4] On April 22, 2011, while incarcerated, plaintiff was referred to MHCBF (apparently, a
Mental Health Crisis Beds Facility). AR 211 (Exh. 1F). The "Clinical Summary" of that referral
24   states "Borderline Intellectual Functioning w/IQ of 70-75." Id. However, there is no explanation
for how this assessment was reached, the ALJ does not mention it, and although plaintiff
25   mentions it in passing, no party argues that should be considered here.

26       [5] This score also made plaintiff eligible for a disability finding under Listings ¶ 12.05D.
The ALJ implicitly rejected a disability finding under this Listings by finding that plaintiff did not
27   have two "marked" limitations or repeated, extended episodes of decompensation, as required by
Listings ¶ 12.05D(1)-(4). AR 15. Plaintiff does not challenge this finding.

28

1   opinion, if credited as true, plainly finds that plaintiff is significantly sub-average in general

2   intellectual functioning.  Dr. Ewing's ultimate opinion is that: "Test results indicated Borderline

3   intellectual functioning . . .."  AR 520.  This opinion is fully supported by the battery of tests

4   Dr. Ewing administered to plaintiff.

5          Those tests show plaintiff to be well below average – indeed, "borderline" or "extremely

6   low" – on every single measure of intellectual functioning covered by the tests.  See AR 517-20

7   (Exh. 15F).  On the Weschler Adult Intelligence Scale – 4th Edition ("WAIS-IV"), plaintiff

8   scored "borderline" on indexes of verbal comprehension, perceptual reasoning and processing

9   speed, and "extremely low" on working memory.  AR 517.[6]  The Full Scale IQ, which is the

10  synthesis of these indexes, is 70, which "falls within the *Borderline range*" (AR 518, emphasis in

11  text), and is therefore well below average.  Other tests gave similar results, although one test did

12  show that plaintiff "has no significant difficulty replicating geometric designs or with visual

13  motor integration."  See AR 518-20.  Indeed, the "Trail Making Test" indicated the possibility of

14  "brain damage."  AR 519-20.  Overall, according to the report, "[t]est results indicated Borderline

15  intellectual functioning with relatively commensurate memory functioning."  AR 520.

16         The ALJ accurately recounted Dr. Ewing's tests and results.  AR 18-19.  However, the

17  ALJ failed to determine what effect this opinion – or for that matter, any other evidence – had on

18  plaintiff's claim that he met or equaled Listings ¶ 12.05C.  The report plainly states Dr. Ewing's

19  opinion that plaintiff has sub-average intellectual functioning; and the ALJ states that

20  "Dr. Ewing's examination was more recent and he had an adequate record on which to base his

21  opinion."  AR 19.  Yet the ALJ does not state whether she gave this opinion any consideration.  If

22  in fact, the ALJ fully credited Dr. Ewing's opinion, it is not clear how she could have failed to

23  find that plaintiff met at least the first half of the first requirement of Listings ¶ 12.05, namely,

24  sub-average intellectual functioning.

25  ///

26  _____

27  [6] On that scale, an "average" score is 90-109, "low average" is 80-89, "borderline" is 70-79, and
    "extremely low is "<69" (less than 69).  AR 517.  Thus, "borderline" and "extremely low" scores
    are well below average.

28

1

### 2. Deficits in adaptive functioning

The second half of the first requirement is that plaintiff must have "deficits in adaptive functioning initially manifested before age 22." According to the Listings, a loss of "adaptive functioning" can be manifested by "difficulties" in (1) performing activities of daily living, (2) maintaining social relationships, or (3) maintaining concentration, persistence, or pace. Listings ¶ 12.00C(4). In turn, the "activities of daily living" include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." Listings ¶ 12.00C(1).[7]

As the Commissioner concedes, the ALJ's decision does not expressly address whether plaintiff has these deficits, nor whether they initially manifested before age 22. The Commissioner argues that this omission is harmless, because the ALJ found that "Plaintiff did not display the deficits in functioning necessary to meet or equal the 12.00 of the Listings." ECF No. 23 at 11.

### a. Activities of daily living

In support of her "harmlessness" argument, the Commissioner asserts that:

> Dr. Ewing's findings indicated that Plaintiff's adaptive functioning was generally good; he did not need assistance with basic activities of daily living, he did not need assistance with preparing meals or doing light household chores . . . .

ECF No. 23 at 10 (citing AR 521). However, it is not true that Dr. Ewing found that plaintiff did not need assistance with the basic activities of daily living. Dr. Ewing did find that plaintiff could manage his funds independently, but offered no opinion on any other activity of daily living. The Commissioner offers no citation for her assertion that Dr. Ewing made findings in the other above activities of daily living (she cites only "Tr. 521" which mentions only funds management). The

---

[7] Accord, Novy v. Astrue, 497 F.3d 708, 710 (7th Cir. 2007) ("[t]he term denotes inability to cope with the challenges of ordinary everyday life") (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Text Revision (DSMIV–TR) 42 (4th ed. 2000)).

only place in Dr. Ewing's report where these activities is mentioned is where the report recounts what *plaintiff reported* about those activities.  See AR 516.  That is not the same as a finding by Dr. Ewing.  Moreover, Dr. Ewing's recounting of plaintiff's report of those activities is ambiguous, because plaintiff could have been reporting only that there were no "*physical* limitations" or "*medical* problems with heavy lifting" that prevented him from carryout out those activities.  See AR 516 (emphasis added).[8]

The ALJ did find, in considering plaintiff's residual functional capacity, that plaintiff had "moderate restriction" in his activities of daily living.  AR 15.  This is a measurement of limitation that neither the ALJ, nor the Commissioner on appeal, have connected to the requirement that plaintiff have "difficulty" in activities of daily living.  Plaintiff's "moderate restrictions" may or may not meet the requirement that he have "difficulties."  The court has no way to know how, or whether, these two things correlate, because the ALJ was not considering whether plaintiff had "deficits" in adaptive functioning or "difficulties" in activities of daily living under ¶ 12.05C, but rather was considering plaintiff's limitations under ¶ 12.04.

### b.  Concentration, persistence and pace

Dr. Ewing's opinion regarding plaintiff's concentration, persistence and pace are set out at the end of his report.  There, Dr. Ewing opines that plaintiff has "*moderate to significant* limitations maintaining attention and concentration," and that he "is *moderately* limited with ability to keep consistent with pace and persistence."  AR 521 (emphasis added).

The Commissioner does not address this opinion.  Instead, the Commissioner argues that plaintiff has no deficits in adaptive functioning because Dr. Ewing found that plaintiff had only "mild limitations with understanding, remembering, and carrying out simple instructions."  ECF

---

[8] Indeed, plaintiff's testimony is directly to the contrary when he is discussing his daily activities as limited by his *mental* and *cognitive* deficits.  As described in his testimony – and the ALJ does not indicate that she rejected or discounted it – plaintiff cannot drive, does not take public transportation by himself, does not cook (at least not without burning it up), does not go grocery shopping, does not maintain personal hygiene without external "persuasion," cannot stand to be around people (and gets violent if people approach him), needs reminders to take his medication, does not clean his environment, and does not go out except when he has to. AR 32-60.  Indeed, plaintiff was placed in his current housing because his parole officer had concerns about his ability to survive on his own or take care of himself.  AR 58.

No. 23 at 10.  There are at least two problems with this argument.  First, this limitation is listed under "Work-Related Activities," and is only 1 of the 8 areas listed there.  <u>See</u> AR 521.  The Commissioner's argument cherry-picks this one area, the *only* area where plaintiff's limitations are "mild."  In every single one of the other work-related areas, plaintiff's limitations are "moderate" to "significant."  <u>Id.</u>  It is not clear what relevance the ALJ, or the Commissioner on appeal, attaches to the fact that plaintiff has one "mild" limitation out of 8 work-related activity categories.

Second, the Commissioner does not even mention Dr. Ewing's opinion regarding the "Work-Related Activities" that *are* specifically set out in the Listings as being directly related to whether plaintiff has a deficit in adaptive functioning, namely, "maintaining concentration, persistence, or pace."  <u>See</u> Listings ¶ 12.05C.  In those areas, as discussed just above, Dr. Ewing opined that plaintiff has "*moderate to significant* limitations maintaining attention and concentration," and that he "is *moderately* limited with ability to keep consistent with pace and persistence."  AR 521.

The Commissioner argues that the ALJ rejected Dr. Ewing's opinion regarding plaintiff's "persistence and pace" because she found that "Plaintiff testified that he had read 30 James Patterson mysteries (on his own)."  ECF No. 23 at 10 (citing AR 19, 59-60, 521).  In fact, the ALJ does not state or imply that she rejected Dr. Ewing's opinion.  It is true that the ALJ contrasts plaintiff's testimony that he "is limited in concentration, persistence and pace" with his testimony that he "reads James Patterson mystery novels and finishes the book and reported that he had read 30 books."  AR 19.[9]  However, the decision plainly adopts Dr. Ewing's opinion that plaintiff

///

---

[9] Even this description seems exaggerated.  Plaintiff clearly has a great deal of trouble reading.  <u>See</u> AR 35 ("A lot of words I can pronounce and say out, but I won't know the meaning of it.  Or it could be a word in a sentence that could throw me off to where I don't know what it's trying to be." "Q:  You might be able to read the sentence and not know what it's trying to say?  A:  Yes."), 39 (regarding reading the James Patterson mysteries, "I could read and I could like not even be done with the first paragraph and forget who the characters are, not knowing who's who.  But if I keep reading, maybe a couple pages down the line, when they come back to that person, I could figure it out somehow").

1   "functions at the borderline level," even though it also finds that plaintiff "retains the ability to

2   work" *despite* his operating at that level.  AR 19.

3          Moreover, the Commissioner's argument that the ALJ rejected Dr. Ewing's opinion is

4   troubling, because it is, in essence, an argument that the ALJ did not properly carry out her

5   function.  The ALJ concluded that she would be "remiss" in her duties if she did not obtain the

6   opinion of a consulting examiner to opine on whether plaintiff met Listings ¶ 12.05C.  AR 64-65

7   ("I would be remiss in my duty to get a complete record if we don't get a CE since you've raised

8   the issue").  If the ALJ then rejected the opinion she received, she could not simply proceed

9   without the opinion she acknowledged was needed to develop a complete record.  Rather, the

10  ALJ, who "is not a mere umpire" in the proceeding before her, is required to fully develop the

11  record.  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (discussing the ALJ's duty to

12  "fully and fairly develop the record").  In this case, that would appear to require the submission of

13  a valid IQ test "that both the ALJ and the reviewing experts could consider," at least in the

14  absence of a legally sufficient reason not to do so.  See Garcia v. Comm'r of Soc. Sec., 768 F.3d

15  925, 932 (9th Cir. 2014) (ALJ erred y failing to develop the record so that it included a complete

16  set of IQ test results, and that error was not harmless).  As noted, however, the court does not read

17  the ALJ's decision as rejecting Dr. Ewing's opinions.

18          B.  IQ from 60 through 70

19          As noted, Dr. Ewing measured plaintiff's Full Scale IQ at 70.  AR 517-18.  The ALJ

20  apparently accepted Dr. Ewing's finding, stating that "Dr. Ewing's examination was more recent

21  and he had an adequate record on which to base his opinion."  AR 19.[10]  Therefore, this

22  requirement of Listings ¶ 12.05C is satisfied, since it calls for an IQ of 60 through 70.

23  ///

24

25          [10] On December 2, 2002, plaintiff was evaluated by Amy Eargle, Ph.D. at the Region 1
    Parole Outpatient Clinic.  AR 259-64 (Exh. 6F).  Dr. Eargle administered three tests to plaintiff,
    including the Weschler Adult Intelligence Scale – 3rd Edition (WAIS-IIII).  AR 259.  The WAIS
26  testing showed plaintiff's full scale IQ to be at 75.  AR 260.  However, Dr. Eargle states that "this
    should not be considered to be a meaningful indication of his overall intellectual abilities."  The
27  ALJ also noted that "Dr. Eargle did not consider this a meaningful indication of overall
    functioning."  AR 18.

28

1    C.  Other Impairments

2        The ALJ found that plaintiff has severe impairments at Step 2.  An impairment is "severe"

3    if it "significantly limits" a person's ability to perform work-related functions.  20 C.F.R.

4    § 416.920 ("[i]f you do not have any impairment or combination of impairments which

5    significantly limits your physical or mental ability to do basic work activities, we will find that

6    you do not have a severe impairment"); Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1987)

7    ("an impairment imposes a significant work-related limitation of function when its effect on a

8    claimant's ability to perform basic work activities is more than slight or minimal").  Accordingly,

9    the ALJ implicitly found that plaintiff met the third requirement of Listings ¶ 12.05C.

10                                  VII.  CONCLUSION

11        The ALJ's decision is incomplete, in that it does not expressly consider plaintiff's claim

12    that he meets Listings ¶ 12.05C.  The opinion of Dr. Ewing, which the ALJ specifically requested

13    to help her decide that question, if credited as true, appears to show that plaintiff meets the

14    following requirements of Listings ¶ 12.05C: sub-average intellectual functioning; an IQ of 70;

15    and other impairments imposing additional and significantly work-related limitation of function.

16    The opinion may also show deficits in adaptive functioning.  However, all of these determinations

17    – including the weight to be given Dr. Ewing's opinion – are for the ALJ to make in the first

18    instance.  Finally, if the ALJ rejects Dr. Ewing's opinion, then it would appear that the record is

19    not fully developed, as the ALJ acknowledged that she needed a consulting examiner's report to

20    make a decision on the Listings ¶ 12.05 issue.

21        The proper course in such a situation is to remand for the ALJ to fully develop the record,

22    if need be, and to make the Listings ¶ 12.05C determination.  See Treichler v. Comm'r of Soc.

23    Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) ("when 'the record before the agency does not

24    support the agency action, . . . the agency has not considered all relevant factors, or . . . the

25    reviewing court simply cannot evaluate the challenged agency action on the basis of the record

26    before it, the proper course, except in rare circumstances, is to remand to the agency for

27    additional investigation or explanation'") (quoting Fla. Power & Light Co. v. Lorion, 470 U.S.

28    729, 744 (1985)); Ray v. Colvin, 2013 WL 1281748 at *4,  2013 U.S. Dist. LEXIS 42797

1  at *12-13 (E.D. Cal. 2013) (Drozd, M.J.) (collecting cases that were remanded where the ALJ

2  failed to expressly consider Listings ¶ 12.05C).

3      For the reasons set forth above, IT IS HEREBY ORDERED that:

4      1.  Plaintiff's motion for summary judgment (ECF No. 18), is GRANTED;

5      2.  The Commissioner's cross-motion for summary judgment (ECF No. 23), is DENIED;

6      3.  This matter is REMANDED to the Commissioner for further proceedings consistent

7  with this opinion; and

8      4.  The Clerk of the Court shall enter judgment for plaintiff, and close this case.

9  DATED:  March 21, 2016.

10

11

12  ALLISON CLAIRE
   UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28